OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Appellant, Allen K. Frost, appeals the March 17, 2008 decision of the Mahoning County Court of Common Pleas that sentenced Frost to a ten year term, subsequent to a jury trial and guilty verdict for voluntary manslaughter with a firearm specification.
 {¶ 2} On appeal, Frost argues that the trial court acted contrary to law in failing to explicitly make statutory findings in order to depart from the minimum sentence, and failed to adequately consider R.C. 2929.12 in imposing the sentence. The trial court did not act contrary to law or commit an abuse of discretion in its deliberations or conclusions, pursuant to State v. Foster, 109 Ohio St.3d1,2006-Ohio-856, 845 N.E.2d 470; and State v. Kalish, 120 Ohio St.3d 23,2008-Ohio-4912, 896 N.E.2d 124. Accordingly, we affirm the trial court's decision.
 Facts {¶ 3} On November 2, 2007, Frost was indicted for one count of murder in violation of R.C. 2903.02(A)(D), with a firearms specification pursuant to R.C. 2941.145(A). Frost entered a plea of not guilty, and the matter proceeded to a jury trial.
 {¶ 4} According to testimony from both the State and Frost, Frost was a drug dealer, and the victim, Gregory Sopher, came to Frost's house on the night of October 26, 2007 with friends who wanted to buy drugs. Sopher, Frost and other friends spent the night and early morning drinking and using cocaine and crack cocaine. At some point Frost showed Sopher a gun, and the two discussed Sopher's interest in buying a gun. At another point in the evening, Sopher accompanied Frost to a bar to complete a drug deal. Frost and Sopher later decided to bet fifty dollars on a video game, which they proceeded to play. The testimony differed as to the remainder of events.
 {¶ 5} According to the State, Frost and Sopher wrestled around in a joking manner. They began to wrestle while playing their video game, but Frost's girlfriend woke up and asked them to stop. Frost won the video game, and Sopher threw his money at Frost. Later, Sopher realized that all of his money was out of his pockets, not just the fifty dollars, and began to look around the room for it. According to the State, Sopher merely looked for the money and did not accuse Frost of stealing the money. Frost left the room, *Page 2 
came back in, pulled a gun, pointed it at Sopher's head, said "you don't think I'll do it?" and shot Sopher in the head from a distance of five feet. One of Sopher's friends called 911. According to the arresting police officer, Frost said "I shot him because he was messing with me." The homicide detective found a bullet hole in the wall from an earlier unrelated altercation.
 {¶ 6} According to Frost, Sopher was acting very aggressive throughout the evening, was excited and wanted to fight, and made Frost fearful. Sopher began wrestling with Frost and had Frost in a headlock when Frost's girlfriend told them to stop. After losing a bet on the video game, Sopher became angry and threw the bet money in Frost's face. Sopher intended to leave, but could not find the rest of his money and accused Frost of taking it. Frost told Sopher and the others to leave, but they did not do so. Frost pulled a gun and told Sopher to leave. Frost stated that he did not know what he was doing, just knew that he wanted everyone out of his house. Frost then felt like he went outside his body, and did not know how the gun went off. After shooting Sopher, Frost told everyone to leave, and called 911. The police took Frost into custody, and he confessed to having shot Sopher.
 {¶ 7} The trial court instructed the jury to consider whether the State had proven its case for murder as indicted, and in the alternative to consider whether the State had met its burden of proof for either of the lesser included offenses of voluntary manslaughter or involuntary manslaughter. The jury found Frost not guilty of murder, but guilty of voluntary manslaughter pursuant to R.C. 2903.03, as well as the firearm specification.
 {¶ 8} A pre-sentence investigation was completed and on March 17, 2008 the trial court held a sentencing hearing. Sopher's father and mother presented victim impact statements, emphasizing that the crime arose out of drug involvement, that Frost killed for the mere reason of feeling disrespected, that he was dealing drugs while his own minor daughter was present and living with him, that he was a grown man in his late thirties who shot an eighteen year old in the head from five feet away, that he shot the victim while his wife and thirteen year old daughter were in the house.
 {¶ 9} The trial court sentenced Frost to a maximum ten year term for the *Page 3 
manslaughter conviction and an additional three year term for the gun specification, to be served consecutively. Prior to declaring the sentence, the trial court stated that it "considered the record, the oral statements made and the victim's impact statements, as well as the recommendation contained in the pre-sentence investigation report that was prepared and has balanced the principles and purposes of sentencing under Ohio Revised Code 2929.11 and the seriousness and recidivism factors under Ohio Revised Code 2929.12."
 R.C. 2929.14 {¶ 10} In his first of two assignments of error, Frost asserts:
 {¶ 11} "The trial court committed reversible error when it, [sic] failed to make requisite statutory findings to impose the maximum sentence on appellant, a first time offender."
 {¶ 12} Frost contends that the court failed to apply the mandatory provision of R.C. 2929.14(B) in its decision to impose more than the minimum sentence upon Frost. When reviewing a felony sentence, an appellate court must first review the sentence de novo to ensure that the sentencing court clearly and convincingly complied with the applicable laws. Kalish at ¶ 4. If this inquiry is satisfied, we then review the trial court's decision for abuse-of-discretion. Id. An abuse of discretion, "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.
 {¶ 13} Frost was convicted of a first degree felony, which has a statutory sentence range of three to ten years. R.C. 2929.14(A)(1). Trial courts have the discretion to impose a sentence within the statutory range for the offense, and are not required to give reasons for imposing more than the minimum sentence. Kalish at ¶ 11, quotingFoster at ¶ 100. The Ohio Supreme Court has explicitly found the mandatory nature of R.C. 2929.14(B) to be unconstitutional, and has stricken that subsection from the statute. Foster at paragraph one of the syllabus. Thus, the trial court's failure to follow the unconstitutional mandates of the statute was not done in error. The trial court's selection of a ten year sentence was within the statutory range for voluntary manslaughter. As discussed below, the record does not indicate that the trial court acted in an *Page 4 
unreasonable, arbitrary or unconscionable manner when reaching its decision, and thus the trial court did not abuse its discretion. Accordingly, Frost's first assignment of error is meritless.
 R.C. 2929.12 {¶ 14} In his second assignment of error, Frost asserts:
 {¶ 15} "The court failed to consider the seriousness and recidivism factors contained in O.R.C. 2929.12 despite making a statement that it did. This constitutes reversible error."
 {¶ 16} Subsequent to the excision of certain sections from Chapter 29 of the Revised Code, trial courts still must carefully consider all remaining applicable statutes, including R.C. 2929.11 and R.C. 2929.12, which provide guidance regarding the purposes of sentencing and factors indicating or counter-indicating the seriousness of the offense or the likelihood of recidivism. State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, 846 N.E.2d 1, at ¶ 38. However, the record need not indicate anything beyond the fact that the court considered such statutes. State v. Jones, 7th Dist. No. 05CR375, 2008-Ohio-3336, at ¶ 14. A statement by the trial court that it considered the factors in R.C. 2929.12 is by itself "sufficient to establish compliance with its duty." State v. Barnette, 7th Dist. No. 06 MA 135, 2007-Ohio-7209, at ¶ 25.
 {¶ 17} Frost argues that the jury found that mitigating factors existed in order to convict Frost of voluntary manslaughter instead of murder. Frost asserts that the trial court erroneously ignored the findings of the jury in order to impose a maximum sentence. Frost implies that the court sentenced him based on a murder conviction rather than a voluntary manslaughter conviction. Nothing in the record indicates that the trial court engaged in such reasoning. The record demonstrates that the trial court considered the requirements of R.C. 2903.03 and R.C. 2941.145(A), and the court explicitly stated that it "balanced the principles and purposes of sentencing under Ohio Revised Code 2929.11 and the seriousness and recidivism factors under Ohio Revised Code 2929.12" in order to reach its decision. The trial court thus did not act contrary to law.
 {¶ 18} The trial court also stated that it "considered the record, the oral statements made and the victim's impact statements, as well as the recommendation contained in the *Page 5 
pre-sentence investigation report that was prepared" in order to determine the appropriate sentence. The pre-sentence investigation report, as reviewed by this court, provided ample information regarding the seriousness of the offense and Frost's criminal history. The record and victims' statements indicated that drugs were involved in the crime, that Frost was a drug dealer, and that Frost shot the victim in the head from five feet away during a confrontation over a video game wager.
 {¶ 19} Because the trial court stated that it considered this information, we must assume that it did so. The above factors are relevant to a consideration of "the seriousness of the conduct" and "the offender's likelihood of recidivism." Given the foregoing, the trial court did not act in an unreasonable, arbitrary or unconscionable manner by imposing a maximum sentence. Frost's second assignment of error is also meritless.
 {¶ 20} The trial court did not act contrary to law or abuse its discretion by imposing the maximum sentence for Frost's conviction. Accordingly, the judgment of the trial court is affirmed.
Vukovich, P.J., concurs.
Donofrio, J., concurs. *Page 1